705 A.2d 158

**Gary H. SOWERS**

v.

**Donna M. REED.**

**No. 837, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Feb. 4, 1998.

Irvin J. Brodsky and Susan W. Rosenberg (Law Offices of Irvin J. Brodsky, Chartered, on the brief), Towson, for Appellant.

Angela M. Eaves, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Argued before MURPHY, C.J., and WENNER and HOLLANDER, JJ.

WENNER, Judge.

Appellant, Gary H. Sowers, appeals from a judgment of the Circuit Court for Baltimore City ordering him to pay child support arrearages accumulated while he was incarcerated. On appeal, appellant presents us with the following question:

> "Whether the circuit court properly concluded that a parent who was incarcerated for non-support-related crimes is *per se* required to pay child support which accrued during his period of incarceration if during that period, his actual income was zero dollars ($0) per month?"

For reasons that follow, we shall vacate the judgment of the Circuit Court for Baltimore City and remand the case to that court for further proceedings consistent with this opinion.

## Facts

Although appellant and appellee were never married, they are the natural parents of Lauren Paige Sowers (Lauren), who was born in 1987, and Gary Houston Sowers II (Gary II), who was born in 1988. At the time that Gary II was conceived, appellee was married to Steven Geller.

In February 1990, appellee filed two Paternity Petitions in the Circuit Court for Baltimore City claiming that appellant was the children's natural father. Appellant claims never to have been served with either of these Petitions.

In April 1990, appellant was incarcerated for three theft convictions, and violation of probation. Despite being incarcerated in April 1990, a "Waiver of Rights by Defendant" signed by "Gary Sowers" was filed in both paternity cases, waiving appellant's right to a trial, and admitting that he was the children's father. Appellant contends that he neither signed the waivers, nor authorized anyone to sign them on his behalf. In any event, two Decrees Determining Paternity were entered by the circuit court, naming appellant as the natural father of Lauren and Gary II, and ordering him to pay child support of $35 per week per child through the Bureau of Support Enforcement beginning 9 May 1990. That amount was to increase to $60 per week per child on 1 August 1990. Although both Decrees Determining Paternity are signed by "Gary Sowers," appellant again denies signing them, or authorizing anyone to do so for him.[1]

Nonetheless, an order for a lien against earnings was forwarded to W.F.G. Communication in Essex, Maryland. Appellant claims never to have worked for W.F.G. Communication.

While appellant was incarcerated, and for approximately six months after his release, Lauren and Gary II each received from the Department of Social Services (DSS) the sum of $25 per week, amounting to $8,875 per child.

When appellant was released on parole in May 1995, DSS sought to recover the sum of support it had provided the children. In March 1996, appellant was notified that, pursuant to an intercept order, the Child Support Enforcement Administration was holding his 1995 federal and state income tax refunds, totaling $2,894. Later that month, appellant received a letter from the Maryland Department of Human Resources informing him that his child support payments were in arrears. Appellant later discovered that several

---

**1.** Appellant also claims he was never served with a writ of summons, a show cause order, or with any pleading relating to this case, and neither case file contains a sheriff's return indicating that personal service was accomplished.

bench warrants had been issued by the circuit court in both paternity cases, charging him with contempt for failing to obey court orders.

In April 1996, appellant filed a Motion to Terminate Child Support, Eliminate or Abate Arrearage, and Quash Contempt Warrant in both paternity cases. At a hearing in August 1996, appellant testified that he was the children's father, but that he was unaware of the paternity cases until March 1996, or that there was an arrearage in child support. The circuit court concluded that although appellant was the children's father, he had not been served with either Decree Determining Paternity, and that enrollment of the decrees constituted a "substantial irregularity." Accordingly, the judge ordered that appellant's "child support arrearage reflected on the records of the Baltimore City Office of Child Support Enforcement be ... abated, subject to further order of court." All outstanding bench warrants were quashed, but appellant's child support obligations were not terminated.

A further proceeding was held on 11 December 1996, at which the presiding judge concluded that appellant was obligated to pay child support while incarcerated, despite his lack of income during that period. Appellant was also ordered to reimburse DSS at the rate of $15 per week, to increase to $30 per week, "[i]f the Court's determination of [appellant's] child support arrearage is sustained by the Court of Special Appeals...." Moreover, the order rescinded appellant's "obligation to pay current child support ... because ... the parties' minor [children are] in the care of [appellee], and ha[ve] been since 5 December 1996."

## Discussion

■ Appellee contends that, because appellant failed timely to file a motion to modify the child support order, his child support obligations that accrued during his incarceration should not be reduced. Under Md.Code (1991), § 5–1037 of the Family Law Article ("FL"), "[t]he court may not enter an order under this subtitle against a party unless the party has been given reasonable notice and an opportunity to be heard."

Appellee fails to acknowledge that the circuit court found that appellant had not received notice of the 1990 paternity proceedings. Of course, the circuit court was in the best position to ascertain appellant's credibility, and to determine whether appellant had received notice of the paternity proceedings. As we are unable to determine from the cold record whether appellant received such notice, we will not disturb the circuit court's conclusion. Nevertheless, our task does not end here. We must now consider whether the circuit court properly assessed appellant's child support arrearage.

The circuit court said that appellant had to "pay while he [was] incarcerated," and assessed an arrearage of 355 weeks at $25 per week per child. In doing so, the circuit court may not have considered *Wills v. Jones,* 340 Md. 480, 667 A.2d 331 (1995). In *Wills,* the Court of Appeals said, "[a]lthough it is conceivable that a child support order could be modified to $0 per month if a parent's income were low enough ..., the *obligation* to pay child support would remain." *Id.* at 486–87, 667 A.2d 331. The Court declined, however, "to create a *per se* rule freeing incarcerated parents with no assets from their child support obligations," stating that the level of such child support obligations must be determined on a case-by-case basis. We reject appellee's contention that FL § 12–104(b) precludes us from modifying appellant's support obligations for the period of his incarceration. That section states that "[a] court may not retroactively modify a child support award prior to the date of the filing of the motion for modification." Under FL § 5–1037, however, the circuit court's original child support order was of no effect because appellant had not been given reasonable notice and an opportunity to be heard. This case involves a completely new child support order, rather than a modification of the 1990 order. Accordingly, we shall vacate the order, and remand the case to the Circuit Court for Baltimore City to assess appellant's ability to pay child support while incarcerated, and to determine the arrearage.

As the record reveals some discussion of voluntary impoverishment, we again direct the circuit court's attention

to *Wills,* in which the Court said: "[A] prisoner is only 'voluntarily impoverished' as a result of incarceration if the crime leading to incarceration was committed with the intention of becoming incarcerated or otherwise impoverished." *Id.* at 497, 667 A.2d 331. In view of the timing of the filing of the paternity proceedings, and appellant's incarceration, we doubt that this is an appropriate case to apply the "voluntary impoverishment" theory in determining appellant's ability to pay child support while incarcerated, and assess his arrearage.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**